# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

ROY MORLEY; and WENDY MORLEY         **PLAINTIFFS**

v.          **No. 3:16-cv-110-DPM**

MEDIC ONE LLC, d/b/a Medic One–Arkansas;
DANIEL RIVERA; DESIREE HAWKINS BYRD;
JOHN DOES, 1–6; AIR EVAC EMS, INC., d/b/a
Air Evac Lifeteam; JIM TOLEWITZKE;
BROOKLAND FIRE PROTECTION DISTRICT;
and AMERICAN ALTERNATIVE
INSURANCE CORPORATION         **DEFENDANTS**

## ORDER

A man is injured in a tractor accident on a rural road. EMTs from the local volunteer fire department get there first. They immobilize the man on a spine board. An ambulance comes. Everyone agrees he should be flown to the hospital, and an air ambulance is summoned. The ambulance takes him to a spot where the helicopter can land. It arrives. A nurse employed by the air ambulance accepts charge of the injured man's care. Many hands are helping. An EMT from the volunteer fire department steps down from the back of the ambulance and pulls the stretcher out. For reasons both murky and disputed at this point, the stretcher's carriage doesn't deploy—the frame and wheels don't come down. The end of the stretcher with the injured man's head on it falls. On the way to the ground, the man's head hits

the ambulance's bumper. He's then loaded into the helicopter and flown to the hospital.

This is what happened to Roy Morley. He and his wife have sued the ambulance company (Medic One) and its employees on the scene (Rivera and Byrd), the air ambulance company (Air Evac), the volunteer EMT who pulled the stretcher out of the ambulance (Tolewitzke), the local fire department where the EMT volunteered (the Brookland Fire Protection District), and the department's insurer (American Alternative). There are also John Doe defendants—who are dismissed without prejudice because the time for proposing amended pleadings has passed.

Early on, there was back and forth about service-related issues and whether the three-year limitation period had run against Air Evac. The Court ultimately decided that the air ambulance company should stay in the case. Air Evac now asks for summary judgment, arguing mainly that the Morleys' claims are barred by the *two-year* statute of limitations for medical injuries. Air Evac preserves (in the alternative) its earlier limitations argument; it also says the record fails on duty and proximate cause. Medic One and its employees join in this new malpractice-based limitations argument and the elements arguments. The Brookland-related defendants seek partial summary judgment. They invoke the public entity's statutory immunity except insofar as insurance coverage exists. There's $300,000 worth.

**2.** The two-year period for suing about medical injury doesn't apply to the Morleys' claims.

The statute defines "medical care providers" by listing them. Ambulance companies, air ambulance companies, EMTs, firefighters, and paramedics aren't listed. ARK. CODE ANN. § 16-114-201(2). With one exception, no defendant or individual working for a defendant on this scene was a medical care provider embraced by the Act. The exception is the Air Evac nurse who was taking care of Mr. Morley.

The nurse isn't a clear path out of the case for Air Evac. Another company employee was also there. According to some, this paramedic was helping in the box—the back of the ambulance—as Morley was moved. The nurse's co-worker widens the basis for Air Evac's potential liability in this suit against the company itself.

The statute defines medical injury expansively—"any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider to a patient . . . [.]" ARK. CODE ANN. § 16-114–201(3); *Dodson v. Charter Behavioral Health Systems of Northwest Arkansas, Inc.*, 335 Ark. 96, 103–04, 983 S.W.2d 98, 102 (1998). Air Evac says that allowing the stretcher to fall resulted in adverse consequences for Morley during the course of the nurse's professional services. This argument is in some tension, though, with Air Evac's main defense: Medic One was in charge of Morley's care and responsible for moving him.

The Morleys' claims aren't about medical care. They assert no injury, for example, from the nurse's intubation of Mr. Morley. They don't complain about her nursing. Instead, the Morleys' claims are about how Mr. Morley was handled between the ambulance and the helicopter. He was a patient, but he was also a passenger. There's no question that the trained professionals who work in ambulances provide medical care, often life-saving care. If the professional is covered by the Act, then the Act applies to their treatment decisions — including the law's requirements of expert testimony and a particularly prompt lawsuit. An analogous fall case in the hospital context is *Sexton v. St. Paul Fire & Marine Insurance Co.*, 275 Ark. 361, 631 S.W.2d 270 (1982). If the professional in the ambulance is not covered, such as Air Evac's paramedic, then the Act doesn't apply to that person's decisions. If a covered professional is involved in the patient's care, as Air Evac's nurse was, then the Act may or may not apply. It depends on the circumstances of the injury.

Does an elderly and confused patient prone to falls need a Posey vest to keep him in bed? *E.g.*, *Sexton, supra*. That's a medical judgment. Should a patient be immobilized on a spine board? Should he be intubated? Those are medical questions, too. Should a patient strapped to a spine board be dropped? That's common sense. It's akin to the question of negligent supervision in *Bailey v. Rose Care Center*, 307 Ark. 14, 18–20, 817 S.W.2d 412, 414–15 (1991). The wheelchair-bound patient

"was under a doctor's care while he was in the nursing home, but his death was not the result of a doctor's treatment or order." *Bailey*, 307 Ark. at 19, 817 S.W.2d at 414. He wasn't confined to his bed or room. The issue was whether he was properly supervised by the LPN (a covered professional) and nurses' aides (not covered) on the night he rolled himself out of the facility and onto a highway. Mr. Morley's circumstances are like those in *Bailey*.

The Arkansas cases involving ambulances throw only scattered light. In an older dispute about coverage, it was assumed that the dropped patient had a negligence claim against the ambulance company. *Owens v. Ocean Accident & Guarantee Corp.*, 194 Ark. 817, 109 S.W.2d 928, 928 (1937). In another coverage dispute, the Arkansas Supreme Court held that the ambulance company was a common carrier: with a patient and her mother-in-law on board, an ambulance driver ran a stop sign on the way to the hospital, causing an accident; the ambulance company was bound by a carrier's high standard of care to both passengers. *Home Insurance Co. v. Covington*, 255 Ark. 409, 411–12, 501 S.W. 2d 219, 220–21 (1973). There's also a tangled case about a nursing home losing control of a wheelchair, dropping a patient, and allegedly not giving proper care afterward. The nursing home admitted liability for negligence in the drop, but litigated damages on that claim. It also said there was no malpractice in the patient's post-fall medical care. The case had to be retried after a plaintiff's verdict

because there was no expert testimony about medical malpractice. *Spring Creek Living Center v. Sarrett*, 319 Ark. 259, 262, 890 S.W. 2d 598, 600 (1995). Nursing homes are medical care providers covered by the malpractice Act. The limitations argument Air Evac makes here was not ventilated in *Spring Creek*. The Arkansas Court of Appeals' decision in *Glass v. Saline County Medical Center*, 2012 Ark. App. 525, at 1, 423 S.W.3d 618, 619 (2012), involved a hospital's ambulance. It was "a medical malpractice case." *Ibid.* No facts are described; the Act's applicability was assumed; limitations wasn't argued. *Glass* makes no holding on this point.

As the leading commentators summarize, "not all acts that occur in a medical setting are claims under the statute." HOWARD W. BRILL & CHRISTIAN H. BRILL, LAW OF DAMAGES, § 26:1 at 582–83 (6th ed. 2014)(collecting cases); *see generally, Panlino v. QHG of Springdale, Inc.*, 2012 Ark. 55, 7–10, 386 S.W.3d 462, 466–67 (2012). This Court must therefore make something of an *Erie*-educated prediction. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). If confronted with the Morleys' claims and this record, the Arkansas Supreme Court would build on *Home Insurance Co. v. Covington* and *Bailey v. Rose Care Center*: ambulance services are common carriers; when an injury allegedly results from an act or omission contrary to the extra care the law requires in carriage-related activities, and the injury doesn't arise

from a covered professional's medical treatment or judgment call, then a negligence claim beyond the malpractice Act exists.

Last, the essential elements of that claim and this record. Air Evac, Medic One, and their employees had a duty to Mr. Morley. No one strapped to a spine board should be dropped. *Marlar v. Daniel*, 368 Ark. 505, 508, 247 S.W.3d 473, 476 (2007). Who had control over Morley is a central and disputed fact. As in most cases, causation is for the jury. *Cash v. Lim*, 322 Ark. 359, 362, 908 S.W.2d 655, 657 (1995). Based partly on the acceptance-of-care form signed by Air Evac's nurse before the stretcher was moved, the jury could conclude that Air Evac was responsible for getting Morley into the helicopter safely. Based on the other testimony highlighted by Air Evac, the jury could conclude that Medic One was responsible. A stray bottle of defibrillator gel may have interfered with the safety mechanism that should have caught the stretcher at the back of the ambulance. That circumstance could weigh against the ambulance company, too. The volunteer EMT's role—he rode with Morley in the ambulance, got down, and then pulled the stretcher out—can be argued in several ways. In sum, this record makes a case for the jury on which person or persons proximately caused this accident.

**3.** The town of Brookland created the Brookland Fire Protection District decades ago. This public entity is immune from suit for the alleged negligence of the department's firefighters and EMTs except to

the extent insurance coverage exists. ARK. CODE ANN. § 21-9-301(a) & (b). The parties agree on all this, and that the American Alternative policy provides $300,000 in coverage to the department and Tolewitzke for his part in transporting Mr. Morley. *№ 112, 113, 114 & 117*. The Morleys' potential recovery against the Brookland-related defendants is capped at $300,000.

*   *   *

The Doe defendants are dismissed without prejudice. The motion for summary judgment based on limitations, duty, and causation, *№ 98*, is denied. The motion for partial summary judgment based on statutory immunity and existing coverage, *№ 112*, is granted.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

16 November 2018